In re Kevin PIERCE, individually and as a partner in Pierce Farms, Wayne Pierce, individually and as a partner in Pierce Farms, Michael Pierce, individually and as a partner in Pierce Farms, Lyle Pierce, individually and as partner in Pierce Farms, Debtors.

Bankruptcy Nos. 3–84–31 to 3–84–34.

United States Bankruptcy Court, D. Minnesota.

Oct. 11, 1985.

Neil A. McEwen, Thief River Falls, Minn., for debtors.

Kip Kaler, Fargo, N.D., for trustee.

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on application by Neil McEwen for approval of attorney's fees in these bankruptcy cases. Neil McEwen appeared pro se. Kip Kaler appeared representing the Chapter 7 trustee. Based on the file and records, the Court makes this Order pursuant to the Rules of Bankruptcy Procedure.

## FACTS

These bankruptcy cases were originally filed as Chapter 11 reorganizations on January 6, 1984. Mr. McEwen received a $2,000.00 retainer from each Debtor in the form of a mortgage on certain real proper-

ty owned by the Debtors.[1] Debtor's counsel seeks approval for fees and costs in the amount of $61,553.03. This amount is broken into two parts. The first part, totalling $33,352.00, is claimed for work done in connection with the filing of the bankruptcy petitions and schedules, and for participation in all other hearings related to the bankruptcy cases. The second part, totalling $28,201.03 is claimed as an administrative expense for work done in connection with a state court action prosecuted on behalf of the Pierce family and other third parties not involved in the bankruptcy. The lawsuits resulted in the Debtors recovering $45,878.00 from the state court defendant. The State Court entered judgment in its case on July 11, 1983. Debtors appealed and a decision on the appeal was entered on May 22, 1984. All of the work on the appeal, other than oral arguments, was completed prior to the filing of the petitions.[2] The appeal was argued on April 10, 1984.

A brief historical review of these cases is appropriate. After filing the cases in January, they remained inactive for some time. In the spring of 1984, several creditors moved for relief from that automatic stay. Those matters were left substantially unresolved, due in part to the jurisdictional hiatus experienced by the Bankruptcy Court at the time. During the fall of 1984, certain creditors commenced another round of relief from stay motions. These culminated in a motion to dismiss the entire case brought by Aetna Life Insurance Company in December 1984. By Order dated December 28, 1984, this Court denied the motion to dismiss and set up certain requirements for the Debtors. The Order directed the Debtors to file a disclosure statement and plan by February 14, 1985. They failed to file the plan by the specified date.

In the interim, Aetna filed a joint liquidating plan. The Debtors eventually filed their plan and disclosure statement on February 25, 1985. Mr. McEwen's time records indicate that he did not begin working on the plan and disclosure statement until February 9, 1985, which was five days prior to the time that the Court ordered the plan and disclosure statement to be filed.

On April 1, 1985, this Court reluctantly approved the Debtors' disclosure statement over the continuing objection of several creditors and the United States Trustee's office. The Court set a confirmation hearing on both plans for April 23, 1985. The Debtors appeared at the scheduled confirmation hearing and withdrew their proposed plan. The Court confirmed the liquidating plan filed by Aetna by Order dated May 28, 1985. The Debtors appealed that decision; however, they later dismissed the appeal. By agreement between all parties, the Order confirming the liquidating plan was vacated, and the Debtors were allowed to convert their cases to Chapter 7 liquidations.

The Chapter 7 trustee objects to the fees claimed by Mr. McEwen. First, he asserts that the fees claimed for the state court action do not properly constitute an administrative expense chargeable against the estate because they represent prepetition work which is not related to the bankruptcy proceeding. Second, the trustee objects to the fees claimed for work done in connection with the bankruptcy case, arguing that: (1) Mr. McEwen is not a "disinterested person" and should be disqualified under the doctrine enunciated in the case of *In re Leisure Dynamics, Inc.*, 33 B.R. 121 (D.Minn.1983); (2) that if Mr. McEwen is not disqualified, his fees may only be granted starting on November 2, 1984, when the Court approved his appointment;

---

1. Mr. McEwen failed to disclose the existence of the mortgage in his application for employment or statement of attorney filed at the commencement of the case.

2. Although these cases were filed in January 1984, counsel did not obtain authorization for employment until November 2, 1984. The affidavit supporting the application for employment stated that Mr. McEwen held no interest adverse to the estate. Mr. McEwen made a separate application for employment as special counsel to prosecute the state court appeal. That application was never approved.

and, (3) the fees are excessive in light of the results achieved in the cases.

Mr. McEwen argues that: (1) the complexity of these cases warrants a higher fee; (2) the Court has power to approve the appointment nunc pro tunc and relate it back to the time the petitions were filed; and, (3) he has an attorney's lien on the proceeds of the state court action.

## DISCUSSION

*State Court Fees*

■ All of the fees claimed in connection with the state court proceeding, except oral argument on appeal, were rendered prior to the petition and had no direct connection with the bankruptcy case. Counsel seeks administrative expense status for these fees. For attorney's fees to qualify as an administrative expense, the claim asserted must be for services rendered on behalf of the estate. *See* 11 U.S.C. § 503(b)(1)(A).[3] The prepetition state court attorney's fees claimed do not involve services rendered for the estate. They involve services rendered on behalf of the Pierce family prior to filing the petition. The only prepetition fees chargeable against the estate are for those services rendered in connection with, or in contemplation of, the bankruptcy case. *In re Yermakov*, 718 F.2d 1465 (9th Cir.1983). Therefore, the prepetition fees relating to the state court action simply constitute a prepetition claim against the estate, and cannot be charged as an administrative expense. Additionally, although Mr. McEwen

applied for appointment as special counsel in November 1984, the application was never approved. Accordingly, fees for services rendered in arguing the appeal post-petition cannot be charged as an administrative expense either.[4]

■ Mr. McEwen argues that he has an attorney's lien on the proceeds received in the state court action.[5] He took the case on a contingency fee basis and cites the *Village of New Brighton v. Jamison*, 278 N.W.2d 321 (Minn.1979) for the proposition that an attorney who takes a case on a contingency fee basis is granted a charging lien on the proceeds from the lawsuit.

The trustee claims that the lien, if it exists, may be avoided pursuant to his avoiding powers. He contends the lien is avoidable under 11 U.S.C. § 545 because Mr. McEwen failed to perfect it pursuant to MINN.STAT. § 481.13. The trustee argues that § 481.13 is the only method by which an attorney's lien can be perfected.

A trustee may avoid certain liens which are not sufficiently perfected at the commencement of a bankruptcy case. Section 545 of Title 11 provides, in pertinent part:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, wheth-

---

**3.** 11 U.S.C. § 503(b)(1)(A) reads:
   (b) After notice and a hearing, there shall be allowed administrative `expenses, other than claims allowed under section 502(f) of this title, including—
       (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered *after* the commencement of the case; (emphasis added)

**4.** This is not a case where equitable considerations should be applied to relieve Mr. McEwen of the consequences of his failure to obtain prior Court approval of his employment as special counsel. Of the four grounds upon which the appeal was based, three were stricken by the

appellate court. The remaining basis for the appeal involved a mathematical error in computation of damages. Mr. McEwen's prepetition contingency fee agreement with the Pierce family provided that he was to receive one-third of any amount recovered in the case unless an appeal was taken, which would then entitle him to one-half. The mathematical error could have been corrected by the trial court and the appeal was unnecessary.

**5.** Determination of Mr. McEwen's lien status has not been properly brought before the Court. However, the parties agreed to treat the issue as joined. Both parties submitted briefs in support of their positions.

er or or not such a purchaser exists.

11 U.S.C. § 545 (1979 and supp. 1985) The lien claimed here is statutory and the trustee may avoid the lien if it was not perfected to the extent necessary to defeat a bona fide purchaser in good faith.

Under the MINN.STAT. § 481.13(1), a plaintiff's attorney is granted a lien on the plaintiff's cause of action and any judgment resulting from the action.[6] Section 481.13 preempts the field regarding attorneys' liens and replaces all common law lien rights. *Village of New Brighton v. Jamison,* 278 N.W.2d 321 (Minn.1979). Accordingly, attorneys' liens arising in Minnesota pursuant to § 481 constitute statutory liens.

An attorney's lien attaches to the proceeds of a cause of action upon commencement of the action. *Blazek v. North Am. Life & Cas. Co.,* 265 Minn. 236, 121 N.W.2d 339 (1963). The mere attachment, however, cannot defeat a bona fide purchaser in good faith. *See* MINN.STAT. § 481.-13(6) ¶ 5. *See also Kohrt v. Mercer,* 203 Minn. 494, 282 N.W. 129 (1938). The attorney in whose favor the lien attaches must perfect the lien as provided in § 481.13 in order to protect it from such purchasers.[7] Mr. McEwen failed to perfect his lien and the trustee, in his status as a bona fide purchaser in good faith, can avoid it pursuant to 11 U.S.C. § 545.

*Bankruptcy Related Fees*

Mr. McEwen requests $33,352.00 for attorney's fees in connection with the bankruptcy cases. As stated above, Mr. McEwen was a prepetition creditor of this estate. 11 U.S.C. § 327(a) permits the trustee's employment of professional persons to represent or assist an estate on the following conditions:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons that *do not hold or represent an interest adverse to the estate, and that are disinterested persons,* to represent or assist the trustee in carrying out the trustee's duties under this title. 11 U.S.C. § 327(a) (1979 and supp. 1985) (emphasis added)

A disinterested person is defined in § 101, Subd. 13(A) and (E) of the Bankruptcy Code as:

(13) 'disinterested person' means person that—

(A) is not a creditor, an equity security holder, or an insider; ...

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason; 11 U.S.C. § 101(13)(A) and (E).

Unfortunately, Mr. McEwen does not qualify as a "disinterested person". He was a prepetition creditor of these estates, and he held a mortgage on the Debtors' real property to secure payment of prepetition and post-petition services. This placed him in an untenable position adverse to both the Debtors and the other interests in the cases.

When an attorney representing a bankruptcy estate does not qualify as a disinterested person, he is not ordinarily entitled to be employed by the estate or receive any compensation. *See In re Leisure Dynam-*

---

6. MINN.STAT. 481.13, Subd. 1 provides:
An attorney has a lien for his compensation whether the agreement therefore be expressed or implied:
(1) Upon the cause of action from the time of the service of the summons therein, or the commencement of the proceeding, and upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed, from the commencement of the action or proceeding, and, as against the third parties, from the time of filing the notice of such lien claimed as provided in this section;

7. MINN.STAT. § 481.13 provides that perfection of an attorney's lien on personal property is accomplished in the same manner as perfection of a chattel mortgage.

ics, Inc., 33 B.R. 121 (D.Minn.1983).[8] The Court must, therefore, disallow Mr. McEwen any compensation for his post-petition work.

Mr. McEwen did, however, do some work prior to the filing of the petition in preparing the petitions and schedules in each case. These were reasonable and necessary services provided for these estates. Mr. McEwen is not disqualified to receive compensation for these services since they were rendered prior to the time the petition was filed and before the requirements of § 327 became applicable. See Kotts v. Westphal, 746 F.2d 1329 (8th Cir.1984). The reasonable value for these services is $2,000.00 in each case. The services benefited both the Chapter 11 and Chapter 7 estates. Therefore, the Court will allow $2,000.00 as an administrative expense against each Chapter 7 estate.

IT IS ORDERED as follows:

1. All attorney's fees and costs claimed for prepetition work in prosecuting the state court action on behalf of the Pierce family are disallowed as an administrative expense, and the claim shall be treated as an unsecured claim.

2. All fees and costs claimed for post-petition work are denied.

3. Neil McEwen is hereby awarded $2,000.00 in each of these bankruptcy cases as and for reasonable and necessary charges against the Chapter 7 estates.

4. The attorney's lien claimed by Neil McEwen in the estates' proceeds of the state court action against National Farmers Union Property and Casualty Insurance Company is hereby avoided and is of no force or effect.

---

**8.** Circumstances might exist in a particular case where it would clearly be in the best interests of all whose rights are affected by the case for a debtor's prepetition attorney to represent the estate, even though the attorney is a prepetition creditor. The Court has flexibility under 11 U.S.C. § 105 to issue any order necessary or appropriate to carry out the provisions of Title 11. The authority granted under § 105 extends to appointment of counsel for the estate where

approval of the same counsel would otherwise be inappropriate upon application of a trustee under § 327(a). However, necessary prerequisites to such an order appointing counsel (as opposed to mere approval of a request by a trustee) would be full disclosure, notice and prior hearing. Furthermore, such an order must be for cause and contain appropriate safeguards to prevent an actual conflict of interest.