Ross FULLER, as Trustee of the International Association of Entrepreneurs of America Benefit Trust, Plaintiff,

v.

James E. ULLAND, as Commissioner of Commerce of the State of Minnesota, Defendant.

Civ. No. 3–94–162.

United States District Court,
D. Minnesota,
Third Division.

July 12, 1994.

Steven Z. Kaplan, Fredrikson & Byron, Minneapolis, MN, for plaintiff.

Prentiss Cox, Asst. Atty. Gen., St. Paul, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Ross Fuller, as Trustee of the International Association of Entrepreneurs of America Benefit Trust (the "Trustee") commenced this declaratory judgment action against James E. Ulland, Commissioner of Commerce of the State of Minnesota (the "Commissioner"); he seeks declaratory and other relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3) (1988). Before the Court is the Commissioner's Motion, pursuant to Fed. R.Civ.P. 12(b)(1), (c), for Judgment on the Pleadings.

### Background

The Commissioner is the Minnesota Commissioner of Commerce. The Trustee is trustee for the International Association of Entrepreneurs of America Benefit Trust (the "Trust"), a nonprofit trust established under the laws of the State of Wisconsin which has its principal place of business in Nashville, Tennessee. The Trust administers, through a Plan Document and Summary Plan Description No. 501 (the "Plan"), a plan of employee welfare benefits, including workers compensation insurance and health and hospitalization insurance, for members of the International Association of Entrepreneurs of America [1] ("IAEA"), their employees, and their employees' beneficiaries.[2] The Plan is

---

1. IAEA is a nonprofit membership association organized as a Texas corporation; its principal place of business is in the State of Texas.

2. Currently, five Minnesota employers participate in the Plan; approximately 166 individual employees participate in the Plan through those employers.

self-funded through contributions made by IAEA members and/or employee participants.

The Commissioner began inquiring about the activities of IAEA, the Trust, and the Plan in July 1993 by requesting that the Trustee provide certain information concerning the structure, finances, and coverage parameters of those entities. Apparently not satisfied with the responses provided to the requests, the Commissioner issued a Cease and Desist Order and Notice of Right to Hearing ("Order") against IAEA, the Trust and other parties on February 9, 1994. The Order alleged that IAEA and the Trust offered for sale or sold workers compensation insurance in the State of Minnesota without being licensed as either an insurance company under Minn.Stat. §§ 60A.07, subd. 4 and

72A.41, or as an insurance agent under Minn. Stat. § 60K.02. The Order further alleged that IAEA and the Trust failed to file rates and rating plans with the Commissioner as required by Minn.Stat. § 79.56. Pursuant to statute, IAEA and the Trust were notified of their statutory right to request a contested case hearing within thirty days.[3] On March 9, 1994, the Trustee requested such a hearing.[4]

Also on March 9, 1994, the Trustee commenced this action under ERISA, 29 U.S.C. §§ 1132(a)(3) and (e)(1). In *Count I,* the Trustee seeks a judgment declaring that (a) the Plan and the Trust constitute an "employee welfare benefit plan"[5] as defined in ERISA, 29 U.S.C. § 1002(1), and that the Plan and the Trust also constitute a "multiple employer welfare arrangement,"[6] or

---

**3.** Due to uncertainty over whether the Order permitted the IAEA and the Trust to continue to collect premiums in Minnesota, Ulland issued an Amended Cease and Desist Order and Notice of Right to Hearing ("Amended Order") on March 16, 1994. The Amended Order directed the Defendants to cease and desist from transacting any insurance in Minnesota, including procuring or soliciting applications for insurance and collecting insurance premiums. Subsequently, Ulland learned that the Defendants may be violating the Amended Order by continuing to collect insurance premiums in the State of Minnesota. Pursuant to Minn.Stat. § 45.027, subd. 5 (1994), Ulland commenced an enforcement action in the name of the State of Minnesota. The Trust removed that action to this Court, *see State of Minnesota by James E. Ulland, its Commissioner of Commerce v. International Association of Entrepreneurs of America, et al.,* 858 F.Supp. 937 (D.Minn.1994) (Kyle, J.).

**4.** On March 23, 1994 Ulland issued a Notice of Order for Pre–Hearing Conference with Administrative Law Judge Barbara Neilson.

**5.** ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit

described in section 186(c) of this title (other than pensions or retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). The reference in § 1002(40)(A) to "any benefit described in paragraph 1" means the benefits described in the above definition.

**6.** A "multiple employer welfare arrangement" or "MEWA" is

an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries....

29 U.S.C. § 1002(40)(A). Under ERISA's express preemption provision, 29 U.S.C. § 1144, a MEWA is subject to limited regulation and control by state authorities. Section 1144(b)(6) provides:

(A) Notwithstanding any other provision of this section—

(i) in the case of an employee welfare plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides—

(I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and

(II) provisions to enforce such standards, and

"MEWA," as described in ERISA, 29 U.S.C. § 1002(40)(A), and (b) the regulatory process underlying the Order and Amended Order, as it relates to the Plan, is inconsistent with, and pre-empted by, ERISA. In *Count II*, the Trustee seeks a judgment enjoining the Commissioner from (a) prohibiting the Trust from conducting business in Minnesota, (b) subjecting the Trust or IAEA members to the regulatory scheme applied to insurance companies, including requirements for purchasing workers compensation insurance, or (c) taking any action inconsistent with the provisions of ERISA. In *Count III*, the Trustee asserts a claim under 42 U.S.C. § 1983, alleging that the Commissioner's actions and the regulatory scheme itself violate the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment as well as the Commerce Clause of Article I, section 8 of the United States Constitution.

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Venue is appropriate in this forum under 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2).

### Discussion

■ The Commissioner moves for judgment on the pleadings under the doctrine of abstention announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* is an exception to the usual rule that a federal court's obligation to adjudicate claims within its jurisdiction is "virtually unflagging." *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988); *see Colorado River Water Con-*

*servation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The *Younger* exception is based on strong policies of federalism and comity, namely, avoiding federal interference in pending state proceedings enforcing important state public policy. *See Younger*, 401 U.S. at 44, 91 S.Ct. at 750; *see also Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

■ The Supreme Court has set out a three-part test for determining whether *Younger* abstention is appropriate. *Middlesex*, 457 U.S. at 423, 102 S.Ct. at 2515. Abstention is appropriate if (1) there are ongoing state proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions. *Id.* at 432, 102 S.Ct. at 2521; *see also Yamaha Motor Corp. U.S.A. v. Riney*, 21 F.3d 793, 797 (8th Cir.1994). If any of the three prongs is not satisfied, abstaining on the grounds of *Younger* is inappropriate. *See Yamaha Motor Corp.*, 21 F.3d at 798 n. 11.

■ State "proceedings" must be *judicial* in nature to satisfy the first prong of the *Middlesex* test. The state administrative proceedings that have been commenced in this case are "judicial" in nature. *New Orleans Public Serv., Inc. v. Council of City of New Orleans ("NOPSI")*, 491 U.S. 350, 369, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989); *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1143 (8th Cir.1990). In addition, it is

---

(ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

(B) The Secretary may, under regulations which may be prescribed by the Secretary, exempt from subparagraph (A)(ii), individually or by class, multiple employer welfare arrangements which are not fully insured. Any such exemption may be granted with respect to any arrangement or class of arrangements only if such arrangement or each arrangement which is a member of such class meets the require-

ments of section 1002(1) and section 1003 of this title necessary to be considered an employee welfare benefit plan to which this subchapter applies.

\* \* \* \* \* \*

(D) For purposes of this paragraph, a multiple employer welfare arrangement shall be considered fully insured only if the terms of the arrangement provide for benefits the amount of all of which the Secretary determines are guaranteed under a contract, or policy of insurance, issued by an insurance company, insurance service, or insurance organization, qualified to conduct business in a State.... 29 U.S.C. § 1144(b)(6)(A)–(D).

undisputed that the state proceedings are "ongoing," *see Hicks v. Miranda,* 422 U.S. 332, 349–50, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975), *overruled on other grounds by Mandel v. Bradley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977) (per curiam); the Trustee filed the request for a contested case hearing on the same day that he filed this action, and no proceedings of substance on the merits of this action have taken place. The first prong of the *Middlesex* test, therefore, is satisfied.

■ The second prong of the *Middlesex* test is also satisfied. That prong requires that the state interests at issue in the pending state proceedings be "significant." [7] *See NOPSI,* 491 U.S. at 365, 109 S.Ct. at 2516. The state proceedings now under way implicate Minnesota's important state interest in effectuating its insurance laws and related regulatory schemes, particularly those relating to the provision of workers compensation insurance, and ensuring that any entity providing insurance complies with those laws and schemes.

■ The third prong of the *Middlesex* test requires that there be an adequate *opportunity* to raise federal issues in the state proceeding.[8] The Trustee most strongly attacks this prong, asserting that *Younger* abstention has a threshold requirement that there be *concurrent* state court jurisdiction over the subject-matter of the plaintiff's complaint. (Mem.Opp'n Mot. to Dismiss, at 12.) Because the instant claims for declarative and injunctive relief are within this Court's *exclusive* ERISA jurisdiction under 29 U.S.C. § 1132(e)(1), the Trustee continues, *Younger* abstention is inappropriate. Finally, the Trustee contends that decisions relied on by the Commissioner are inapposite, since they involve constitutional claims arising under 42 U.S.C. § 1983,[9] over which federal and state courts have concurrent jurisdiction.[10]

7. The Trustee spends significant time discussing general principles of ERISA pre-emption and the scope of protection ERISA affords a MEWA. (Mem.Opp'n Mot. to Dismiss, at 6–9.) Although the Trustee has not asserted that ERISA clearly pre-empts Minnesota's regulatory scheme as it relates to the Plan or that his pre-emption claim renders abstention under *Younger* inappropriate, the Court notes that in *NOPSI,* the Supreme Court rejected the plaintiff's assertion that *Younger* does not require abstention where a federal plaintiff makes a "substantial claim" that the challenged state action is completely pre-empted by federal law. *Id.* at 364–65, 109 S.Ct. at 2516. The Eighth Circuit adopted *NOPSI's* reasoning in *Alleghany v. McCartney,* 896 F.2d 1138, 1145 (8th Cir.1990). *But cf. Gartrell Const., Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir.1991) (discussing pre-*NOPSI* cases holding that the second *Middlesex* prong is not satisfied where the state law is pre-empted by federal law *and* that pre-emption is "readily apparent"). Moreover, the current record does not reveal a substantial claim that ERISA pre-empts the regulatory scheme as it may apply against the Plan and the Trust.

8. Under *Middlesex,* 457 U.S. at 436, 102 S.Ct. at 2523, it is sufficient that a federal challenge may be raised in state-court judicial review of the administrative proceeding. Minn.Stat. § 14.69 provides that a court reviewing a final decision in a contested case may review that decision for whether it was in violation of constitutional provisions or was in excess of the statutory authority or jurisdiction of the agency. Minn.Stat. § 14.-

69, (a) & (b). Either of these provisions appears to provide a state court with the ability to review a claim of federal pre-emption.

9. The Trustee's § 1983 claims in Count III unquestionably may be raised in the state proceedings. *Alleghany Corp. v. McCartney,* 896 F.2d 1138 (8th Cir.1990). The Trustee does not contend otherwise.

10. An argument could be made that federal pre-emption is, in truth, a constitutional challenge like those asserted directly in a § 1983 action, since Congress' authority to establish the superiority of federal law over state law is made manifest by the Supremacy Clause, U.S. Const., art VI, cl. 2. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–99, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984). Indeed, ERISA's express pre-emption provision, 29 U.S.C. § 1144(a), represents only one circumstance under which the Supremacy Clause requires that a federal statute prevail over a state law. *See Capital Cities,* 467 U.S. at 699, 104 S.Ct. at 2700. Although the constitutional foundation for federal pre-emption may align challenges to state law based on ERISA pre-emption and challenges brought under 42 U.S.C. § 1983, at least for purposes of determining whether it is appropriate to abstain under *Younger,* the constitutional foundation for ERISA pre-emption is not necessary to the Court's resolution of the instant motion.

The Court concludes that the third prong of the *Middlesex* test is met here. "Abstention is based upon the theory that '[t]he [federal plaintiff] should first set up his defense in the state courts, even though [the defense] involves a challenge to the validity of some statute, unless it plainly appears that this course of action would not afford adequate protection.'" *Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2523 (quoting *Younger*, 401 U.S. at 45, 91 S.Ct. at 750) (quoting *Fenner v. Boykin*, 271 U.S. 240, 244, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). Notwithstanding the Trustee's efforts to characterize the word "claim" in the third *Middlesex* prong as synonymous with "cause of action," the word is, in reality, concerned with federal *questions* or *issues*, or as *Middlesex* stated, "challenges," 457 U.S. at 432, 102 S.Ct. at 2521; such questions or challenges may be asserted offensively, as a cause of action in a complaint, or defensively, as a defense to a state proceeding.

▮▮▮ Whether the Plan is (a) an "employee welfare benefit plan", or (b) a MEWA, and whether ERISA pre-empts Minnesota's regulatory scheme as it is being applied to the Plan are federal questions or challenges that can be asserted as a defense to the Commissioner's attempt to subject the Plan to Minnesota's regulatory scheme for insurance. Although 29 U.S.C. § 1132(e)(1) has granted federal courts exclusive jurisdiction over these issues where they are brought offensively as a cause of action under 29 U.S.C. § 1132(a)(3), there is no grant of exclusive jurisdiction to federal courts to resolve ERISA pre-emption questions when they are asserted defensively. *Fresh Int'l v.*

*Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1362 n. 13 (9th Cir.1986) ("[w]e do not read section [1132] as foreclosing a state court from considering a defense based on ERISA pre-emption").[11] In fact, numerous decisions reflect Minnesota courts' ability and willingness to pass on questions of federal pre-emption, including ERISA pre-emption. *See e.g., Ransom v. Ford Motor Company*, 472 N.W.2d 134, 136 (Minn.1991) (ERISA pre-emption); *Hunt ex rel. Hunt v. Sherman*, 345 N.W.2d 750 (Minn.1984) (same); *Blue Cross/Blue Shield v. Flam*, 509 N.W.2d 393, 397 (Minn.Ct.App.1994) (ERISA pre-emption); *MNVA R.R., Inc. v. John Alden Life Ins. Co.*, 507 N.W.2d 15, 17 (Minn. Ct.App.1993) (same). Similarly, the Court has not found any Minnesota decision indicating that the State may not or will not determine the merits of an ERISA pre-emption defense on judicial review of a final administrative decision.[12]

In this regard, there is a weighty distinction between a purely offensive ERISA claim that is within the exclusive jurisdiction of the federal courts, e.g., breach of fiduciary duty under section 1132(a)(2), and an ERISA claim which is defensive in character, e.g., pre-emption, which federal law does not restrict from state courts when that claim is asserted as a defense to a state court action or enforcement proceeding.[13] Accordingly, because the Trustee may raise his federal pre-emption challenge as a defense to the pending state proceedings, the Trustee will have a full and fair opportunity to raise the federal challenges in the state proceedings. Under these circumstances, abstention under *Younger* is not inappropriate simply because

---

11. Similarly, nothing in ERISA, including 29 U.S.C. § 1132, requires a fiduciary such as the Trustee to raise a pre-emption defense in federal court. *See Fresh Int'l*, 805 F.2d at 1362 n. 13.

12. In *Hiawatha Aviation, Inc. v. Minnesota Dept. of Health*, 389 N.W.2d 507 (Minn.1986), *aff'g Hiawatha Aviation, Inc. v. Minnesota Dept. of Health*, 375 N.W.2d 496 (Minn.Ct.App.1985), the Minnesota Supreme Court affirmed the intermediate appellate court's reversal of a final decision by the Minnesota Department of Health, which denied the plaintiff's application for an air ambulance license. The court ruled that the Federal Aviation Act, 49 U.S.C.App. § 1305(a)(1), pre-

empted Minnesota from controlling entry into the field of air ambulance service. *Id.* at 509.

13. In *Marcal Paper Mills, Inc. v. Ewing*, 790 F.2d 195 (1st Cir.1986), the plaintiff employer filed a federal court action seeking a declaration that ERISA pre-empted a statute of the State of Maine and seeking to have the State enjoined from enforcing the law against it. *Id.* at 196. Notwithstanding the plaintiff's federal pre-emption-based action for declaratory and injunctive relief, the First Circuit ruled that the district court had properly dismissed the federal lawsuit under *Younger* and *Middlesex*. *Id.* at 198.

ERISA, 29 U.S.C. § 1132(a)(3), provides the Trustee with a cause of action for injunctive relief on grounds of pre-emption and 29 U.S.C. § 1132(e)(1) vests the federal courts with exclusive jurisdiction over that cause of action.[14]

In summary, the three-prong test established in *Middlesex* for determining whether it is proper to abstain under *Younger* and its progeny supports abstaining in this action. As *Younger* requires the abstaining court to dismiss the federal plaintiff's claims, the Trustee's claims against the Commissioner will be dismissed without prejudice.

## Conclusion

Based upon the foregoing, and the records, files, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that defendant James E. Ulland's Motion for Judgment on the Pleadings (Doc. No. 2) is **GRANTED.** Plaintiff's claims against the Defendant are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**14.** The Trustee's citations to *General Motors Corp. v. California Bd. of Equalization*, 815 F.2d 1305, 1308–09 (9th Cir.1987), *cert. denied*, 485 U.S. 941, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988), *Levy v. Lewis*, 635 F.2d 960, 967 (2d Cir.1980), and *General Motors Corp. v. Buha*, 623 F.2d 455, 459 (6th Cir.1980), are unavailing. In *California Bd of Equalization*, the court was not faced with an issue of *Younger* abstention; the suit was filed after the Supreme Court of the State of California issued a decision upholding a certain method of calculating insurance premiums. 815 F.2d at 1307. In *Levy*, the only "exclusively federal" claim at issue was one for breach of fiduciary duty under 29 U.S.C. § 1109, which is not a claim in the nature of a defense of federal pre-emption. Finally, in *Buha*, the plaintiff was not a party to the state court action, and could not, therefore, have asserted the issue of federal pre-emption in that proceeding; thus, it was required to raise the issue by filing a claim under ERISA. 623 F.2d at 459.

Equally unavailing is the Trustee's reliance on *Livolsi v. Ram Constr. Co.*, 728 F.2d 600, 601–02 (3d Cir.1984), and *Green v. Indal*, 565 F.Supp. 805, 806 (S.D.Ill.1983); the former does not concern *Younger* abstention, and the latter involved only a claim for breach of fiduciary duty.